**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DORETTE BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-05358 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| HOSPIRA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dorette Brownlee filed this suit against Defendant Hospira, Inc. asserting that

Hospira discriminated against her the basis of her race and color and retaliated against her in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42

U.S.C. § 1981. Hospira moves for summary judgment in its favor on all counts. For the reasons

stated herein, that motion is denied [80].

**Rule 56.1 Statements**

As an initial matter, the Court turns to the sufficiency of the parties' Rule 56.1 statements.

Many of Brownlee's Rule 56.1(b)(3)(B) responses do not comply with Local Rule 56.1(b) because

Brownlee did not counter with admissible evidence demonstrating a factual dispute. For many of

the factual statements Brownlee disputes, she has presented improper argument, conclusions, and

non-responsive allegations. A response to a statement of facts may not assert facts beyond what is

fairly responsive to the movant's factual assertion. *Schwab v. Northwestern Illinois Medical Center*, 42 F.

Supp. 3d 870, 874 (N.D. Ill. 2014) (Feinerman, J.). It is also inappropriate to admit a fact and then

proceed to provide further information in the response. *See Buttron v. Sheehan*, No. 00 C 4451, 2003

WL 21801222, at *5 (N.D. Ill. Aug. 4, 2003) (St. Eve, J.). This Court deems admitted those

paragraphs that Brownlee does not expressly admit yet fails to dispute with citations to admissible

evidence in the record. *See Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1139 (7th Cir. 1997) (referring to L.R. 56.1's predecessor rule, the court affirmed the district court's taking as true uncontroverted facts alleged in the movant's statement and supported by references to the record). Accordingly, the Court disregards the many statements in Brownlee's Rule 56.1(b)(3)(B) responses that go beyond what is responsive to the corresponding paragraphs of Hospira's Rule 56.1(a)(3) statements.

Brownlee also asserts that she neither admits or denies Hospira's Rule 56.1(a)(3) statements ¶¶ 61-62. Because Brownlee does not deny these statements with specific reference to the record, where supported by sufficient evidence, these statements are deemed to be admitted.

Brownlee repeatedly "denies" Hospira's Rule 56.1(a)(3) statements by citing to her declaration on topics where Brownlee has no personal knowledge of the subject matter of her statements. Such references cannot be used to establish the existence of a genuine issue of material fact. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors …'" (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir.1991) (en banc))). Accordingly, the Court does not consider Brownlee's Declaration ¶¶ 4, 12, 25-26, and the aspects of Hospira's Rule 56.1(a)(3) statements ¶¶ 20, 46, 60 that Brownlee relies on these paragraphs of her declaration to deny are deemed to be admitted.

Moreover, many of Brownlee's Rule 56.1(b)(3)(C) statements and Brownlee's Rule 56.1(b)(3)(B) responses rely exclusively, or partially, on Plaintiff's complaint. At the summary judgment phase, a plaintiff no longer can rely on the allegations of her complaint and must point to depositions, affidavits, or other evidence that is admissible. Fed. R. Civ. P. 56(e); *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018). As a result, the Court will not consider Brownlee's Rule 56.1(b)(3)(C)

statements ¶¶ 1-2, 4-6, 8-14, 16-19, and 31 and Brownlee's Rule 56.1(b)(3)(B) responses ¶ 65 because plaintiff supports these facts only by citation to the complaint. The Court also disregards those portions of Brownlee's Rule 56.1(b)(3)(C) statements ¶¶ 3, 7, 15, 30 and Brownlee's Rule 56.1(b)(3)(B) responses ¶¶ 49, 51, 57-58, 60 that are only supported by citation to the complaint. The Court considers as true the other portions of those paragraphs where supported by citation to evidence in the record, resolving all evidentiary conflicts in Brownlee's favor for purposes of this motion.

In light of the Court's treatment of Brownlee's Rule 56.1 statements, the following facts are undisputed unless otherwise noted.

**Background**

Brownlee is an African-American woman and was employed by Hospira in its Human Resources ("HR") department. In 2011, Brownlee became the HR Business Partner for Hospira's Information Technology ("IT") department, a grade 19 position. Brownlee's promotion came with an increase in responsibilities and required Brownlee to partner with the leaders of the IT department, including Hospira's then Chief Information Officer ("CIO") Daphne Jones.

In the IT HR Business Partner role, Brownlee initially reported to HR Director Tanya Hayes. At the end of 2011, in connection with Brownlee's year-end 2011 performance review, Hayes solicited feedback from the IT organization. Among other comments, the IT staff expressed concern that Brownlee was not sufficiently proactive, did not understand IT's priorities, did not provide sufficient guidance on headcount planning, lacked a sense of urgency, and at times expressed an off-putting attitude and tone of frustration that inhibited collaboration and receptivity to feedback on her performance. Hayes rated Brownlee's 2011 overall performance as "successful performer," but noted that "improvement is required in 2012." In Brownlee's 2012 mid-year performance review, Hayes noted that Brownlee was being perceived more as an "HR Business

Value Partner," but needed to take more initiative to help the IT organization solve its business problems. Hayes further stated that she "would like [Brownlee] to get to the point where [Brownlee] is more independent in [setting the HR agenda for IT with input from Hayes]." The parties dispute whether these comments, and the reviews generally, indicate that Brownlee was a poor performer.

Mark Salisbury joined Hospira as the HR Director in July 2012 and became Brownlee's immediate supervisor. In January or February 2013, Salisbury prepared Brownlee's 2012 year-end performance review and again rated her as "successful performer." Salisbury stated that he gave her that rating, in part, to encourage her improvement at Hospira because he believed that giving her a lower rating would have had the effect of discouraging Brownlee from improving. The last paragraph of Brownlee's 2012 review stated: "When you are on top of a task, you are able to accomplish so much. Barriers from time to time have pulled you down – and you have coped and pulled yourself back up . . . I believe there can be a big success story to tell for IT in 12-18 months, and I'd like you to continue to work to find ways for you to be a leading factor in that success story." The parties also dispute whether the 2012 year-end review indicates that Brownlee was a poor performer.

Project 80

Starting in October 2012, Hospira started Project 80, a large-scale project to add 80-90 new positions within the IT department. Brownlee was responsible for the day-to-day HR tasks of Project 80, including developing the hiring plan and reviewing position descriptions. Jones, Hospira's CIO, testified that she expected Brownlee to aid her in the transformation of the IT organization by developing the HR strategic plan for Project 80. Jones envisioned that this project plan would include guidance from Brownlee on subjects such as how many employees to hire,

potential recruiting sources, the interview process plan, and how IT would be organized and function at the end of Project 80.

Problems arose with the HR deliverables for Project 80, although the parties dispute when those problems arose. Hospira states that problems began somewhere between the final months of 2012 and January 2013. Brownlee states that Jones became critical of Brownlee's work on Project 80 after Brownlee complained to Hospira's Director of Ethics and Compliance, Frank Taber, on January 29, 2013 about a comment made by Pam Blackwell, a consultant to Hospira. Brownlee testified that Blackwell made inappropriate comments to her on January 26, 2013, that did not pertain to her race. Jones testified that Brownlee did not make any complaints to her, including about Blackwell.

Jones requested updates from Brownlee on the status of various elements of the project on multiple occasions. On January 27, 2013, Jones sent an email to other Hospira employees, including Salisbury, stating:

> I'd like [Brownlee] to present the HR topic around [Brownlee's] recommended plan for how we will hire 89 people in 2013 into IT. … Mark you and I discussed [Brownlee] owning [Project 80] strategy and execution at least 2 weeks ago in my H4 office, but I have not seen any aggressive movement.

On February 26, 2013, Jones sent an email to Brownlee directly, stating:

> [Brownlee] this needs to get started now. Pls stop w the uncertainty and let's go. [W]e have waited and encountered numerous delays long enough. Exactly what is the question? This is now going to impact our financial[s] if this delay continues!

Brownlee received the February 26 email and was aware that Jones was unhappy with her efforts and progress on the hiring process. After receiving this email, Brownlee reached out to Salisbury for help and discussed Jones's concerns with him. On February 27, 2013, Jones sent another email to Brownlee, cc-ing Salisbury, reminding Brownlee that she expected faster movement on Project 80.

On March 7, 2013, Brownlee sent an email to Jones, indicating that the hiring process was "moving along" and committing to "communicate a detailed plan by the end of the week

summarizing next steps to the [IT Leadership Team]." Jones responded the same day that she "need[ed] this done, once and for all. I will escalate this to Ken Meyers [the Chief HR Officer] if we cannot be more clear on this." Brownlee did not provide the project plan by the end of the week. On March 20, 2013, Jones again requested the project plan from Brownlee. Brownlee told Salisbury that she had not previously prepared a project plan similar to the one required for Project 80, so Salisbury spent significant time with Brownlee laying out the project plan.

On March 22, 2013, Brownlee told Jones and Salisbury over email that "IT's Project 80 Hiring Plan is in development and will be confirmed by me based on critical inputs from [Salisbury] and Alyssa today." The staffing plan was not completed until after March 22, 2013, after Salisbury had personally worked on it with Brownlee.

IT HR Business Partner Position Upgrade

Salisbury estimated that he was spending about 70 to 80 percent of his time on HR and strategic business matters within the IT organization because Brownlee was not completing her work on a timely basis or meeting the expectations of the IT organization and leadership team. According to his testimony, Meyers concluded that Salisbury did not have sufficient time to dedicate to the other departments that he supported. (Dkt. 83-8 at 18.)

Salisbury initiated discussions with Meyers, the Chief HR Officer, regarding a potential solution to address the unmet HR needs of the IT department. After Salisbury had completed Brownlee's 2012 performance review, Salisbury determined that Brownlee was no longer "meeting the expectations and the requirements of the job" and that her "performance against the needs of the business were not a match." By April 2013, Salisbury and Meyers had determined that the job requirements had become larger than the position Brownlee occupied and decided to re-grade the position to a higher-level position that would better support Jones and the IT department. The description for the new Senior HR Manager and HR Business Partner position required the

6

employee to serve as the business partner for the IT, Public Affairs, and Ethics & Compliance departments and interact directly with the CIO and the leadership teams of these departments. The job duties for this updated grade 20 position included high-level strategic responsibilities and tactical duties, including strategic analysis, planning, partnering experience, and project-management skills.

After discharging Brownlee, Salisbury selected an HR professional from outside Hospira to fill the new Senior HR Manager and HR Business Partner position. The new hire was a white woman who had more than 10 years of business partnership experience in an HR role, senior management experience, and 10-12 years of senior HR experience within IT departments. Salisbury testified that she completed the HR deliverables for Project 80 with little input from him.

Hospira did not consider Brownlee for the grade 20 Senior HR Manager and HR Business Partner position because Brownlee had only three years of business partnering experience and because Hospira did not consider Brownlee's performance in the grade 19 HR Business Partner position satisfactory.

On April 12, 2013, Salisbury told Brownlee that Hospira was eliminating her position and terminated her employment effective immediately. Jones testified that she did not have any input into the decision to terminate Brownlee's employment, although she did request a solution that would allow her to fulfill "the commitment [she] made to [Hospira]," regarding Project 80.

When Hospira terminated Brownlee's employment, HR had two open positions. One position was a grade 21 role that required 7-10 years of experience in roles of increasing responsibility in HR. The other position was a grade 16 role that required five years of experience in benefits administration with a strong understanding of health plan financials and benefits plan administration. The parties dispute whether Brownlee met the minimum qualifications for either of these open positions at the time of her termination. Meyers did not believe that he could

recommend Brownlee for another position at Hospira based on her poor performance in her HR Business Partner role.

<u>Workplace Events, Comments, and Complaints</u>

The record reveals several instances of inappropriate workplace comments. First, Brownlee testified that in 2011 Jones was "very dismissive" when she told Brownlee "well, you're high yellow anyway, it doesn't matter." Brownlee told Hayes, her supervisor at the time, what Jones said to her. Brownlee further testified that while dealing with the termination of an employee, Salisbury asked her whether a third employee, who was African American, was stupid. Salisbury did not mention the race of any of the employees. Brownlee also testified that Salisbury told her that "he has managed minorities before, and … he is not against me." Finally, Brownlee testified that in 2012 Meyers informed Brownlee that she should be careful with her interactions with a new employee, Ken Kauppila, because "his initials were KK and he was missing the last K." Brownlee interpreted this as a threat, although she did not report it to anyone while employed by Hospira.[1]

In January 2013, an employee at Hospira reported to Brownlee that Hospira consultant Blackwell told the employee not to trust the white man in corporate America. The employee further complained to Brownlee that Blackwell was targeting minority women. When Brownlee reported to Taber, Hospira's Director of Ethics and Compliance, that Blackwell made a separate inappropriate, but non-race related comment to her, Taber and Brownlee also discussed the employee's complaint.

Brownlee raised concerns stemming from her involvement with several situations supporting the IT organization. She testified that after an Asian employee was terminated she told Salisbury and others at Hospira that she believed that he had been discriminated against based on his race.

---

[1] Hospira admits that Brownlee testified to these facts, and further responds that the comment "reflects criticism of the racial bias of a white employee and is not derogatory as to an African-American." (Hospira's response to Brownlee's Rule 56.1(b)(3)(B) responses ¶ 26.) This response has no basis. Warnings invoking the Ku Klux Klan are repugnant and highly offensive, especially to an employee who is African-American, and have no place in the work place. *See Pierce v. Illinois Dep't of Human Servs.*, 355 F. App'x 28, 31 (7th Cir. 2009) (a co-worker's decision to flash a Ku Klux Klan sign at plaintiff was deplorable and egregious).

Brownlee testified further that after Hospira terminated his employment the employee told her that he had been treated unfairly. She also reported to Salisbury a complaint that she received from an African-American employee that a "white employee threatened to blow his head off" in 2013. Brownlee viewed Salisbury's reaction to her complaints as dismissive.

Brownlee subsequently filed the instant lawsuit alleging race and color discrimination and retaliation under Title VII and race discrimination under Section 1981. Hospira moves for summary judgment on all counts.

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

*1. Counts I and III: Race and Color Discrimination*

Hospira moves for summary judgment on Brownlee's race and color discrimination claims under Title VII and Section 1981, arguing that the undisputed facts demonstrate that Brownlee was failing to meet Hospira's legitimate expectations at the time of her termination and that she fails to present evidence that similarly situated individuals, who were not African-American, were treated more favorably. Because the same substantive analysis applies to discrimination claims brought under Title VII and section 1981, Brownlee's claims will be analyzed together. *Johnson v. General Bd.*

*of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013). To

establish employment discrimination, courts in this Circuit ask:

> [W]hether the evidence would permit a reasonable factfinder to conclude that the
> plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the
> discharge or other adverse employment action. Evidence must be considered as a
> whole, rather than asking whether any particular piece of evidence proves the case by
> itself .... Relevant evidence must be considered and irrelevant evidence disregarded[.]

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Courts continue to use the familiar *McDonnell-Douglas* burden-shifting framework to evaluate

the evidence in the record. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir.

2017). To establish prima facie discrimination, Brownlee has the initial burden to show that (1) she

is a member of a protected class; (2) she performed reasonably on the job in accordance with

Hospira's legitimate expectations; (3) she was subjected to an adverse employment action; and (4)

similarly situated employees outside of the protected class were treated more favorably by the

employer. *Johnson*, 892 F.3d at 895. "If the plaintiff satisfies that burden, then the employer must

articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point

the burden shifts back to the plaintiff to submit evidence that the employer's explanation is

pretextual." *David*, 846 F.3d at 225 (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir.

2014), *overruled on other grounds by Ortiz*, 834 F.3d at 765). There is no dispute that Brownlee was a

member of a protected class and that she suffered an adverse employment action. Therefore, the

Court focuses on whether Brownlee was satisfying Hospira's legitimate expectations and whether

similarly situated employees outside of the protected class were treated more favorably.

Hospira argues that Brownlee was not meeting its legitimate expectations, as evidenced by

her failure to successfully deliver on Project 80. Hospira further asserts that because of her

performance issues, Brownlee was not qualified for the higher-grade Senior HR Manager and HR

Business Partner position. Brownlee responds that her annual performance assessments, including

one issued in 2013 shortly before her termination, show that she was performing satisfactory at the time of her termination.

Hospira is correct that the relevant inquiry is Brownlee's job performance through the eyes of her supervisors at the time of her termination. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). However, the record is not as clear as Hospira asserts. Brownlee's supervisor, Salisbury, completed Brownlee's 2012 performance review in January or February 2013 and rated her "successful performer." The comments in the 2012 performance review likewise do not evidence an employee clearly failing to satisfy her employer's expectations. Around the same time, problems arose with the HR deliverables for Project 80, although the parties disagree whether they arose before Brownlee discussed discrimination complaints with management at Hospira. There is a material dispute as to whether Brownlee was meeting Hospira's legitimate expectations at the time Hospira terminated her employment.

The Court also considers whether Brownlee presented evidence that a similarly situated HR professional at Hospira, who was not African American, was treated more favorably. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014). Brownlee points to the white female employee Hospira hired to fill the higher level Senior HR Manager and HR Business Partner. Brownlee argues that because Hospira terminated her employment shortly after her satisfactory performance review and hired a white woman to fill the new position, she satisfies the prima facie case for discrimination. Ordinarily there may be a question as to whether this would be a sufficient showing of a similarly situated employee. Here, however, there is sufficient evidence to raise doubt regarding the reason Hospira provided for eliminating Brownlee's position and not considering her for the new position or other open roles. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("The facts necessarily will vary in Title VII cases, and the

11

specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

Following *Ortiz*, this Court considers the record evidence holistically. 834 F.3d at 765. Drawing all reasonable inferences for Brownlee, as this Court must at summary judgment, *Johnson*, 892 F.3d at 894, the timing of Brownlee's termination, the individual selected for the new Senior HR Manager and HR Business Partner position, race related comments made to Brownlee (particularly Jones' remark regarding Brownlee's skin color and Salisbury's statement about supervising minorities), and complaints that Brownlee made to Hospira management permit a reasonable factfinder to conclude that Brownlee's race caused Hospira to discharge her from employment. Because genuine issues of material fact remain regarding Brownlee's performance and whether Hospira's provided reason for terminating her employment is pretextual, the Court denies summary judgment for Hospira on Counts I and III.

### 2. *Count II: Retaliation*

Hospira also asserts that this Court should grant summary judgment on Brownlee's claim of retaliatory discrimination in violation of Title VII because she cannot demonstrate that any protected activity was the but-for cause of her termination. Unlawful retaliation occurs when an employer takes an adverse employment action against an employee because she opposed an employment practice made unlawful by Title VII. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); 42 U.S.C. § 2000e-3.

To survive summary judgment on this claim, Brownlee first must show that she had complained to Hospira of conduct that she reasonably and in good faith believed to be unlawful discrimination. *Lord*, 839 F.3d at 563. Brownlee contends that Hospira terminated her employment in retaliation for her involvement with several investigations and complaints that she made regarding race discrimination. Among the events Brownlee identified are her complaint regarding the

discriminatory termination of an Asian American employee from the IT department and her discussion of another employee's complaints regarding race-related comments Blackwell made in January 2013. This Court finds that Brownlee could reasonably believe that she was reporting unlawful discrimination. *See Robinson v. Perales*, 894 F.3d 818, 831 (7th Cir. 2018), *reh'g denied* (July 24, 2018) ("Supporting a colleague's charge of discrimination by refusing to retaliate against that colleague is protected activity.").

Finally, the Court considers whether the record contains sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused Brownlee's discharge. The factual disputes that require denying summary judgment on Hospira's race discrimination claims are also relevant for Brownlee's retaliation claim. Brownlee specifically complained about Hospira employment practices to Salisbury, and Salisbury and Meyers (the individuals who made the decision to terminate her employment) made comments to Brownlee that draw their motives into question. *See Robinson*, 894 F.3d at 832–33 (finding sufficient evidence that decisionmaker had motive to retaliate to "send [plaintiff's] claim of retaliation to a jury"). On these facts, the record contains sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused Hospira to discharge Brownlee. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 574 (7th Cir. 2015) (finding plaintiff produced evidence from which a reasonable trier of fact could find defendant fired him because he had complained to HR).

Because genuine issues of material fact remain regarding whether Hospira terminated Brownlee due to her statutorily protected activity, this Court denies summary judgment as to Brownlee's retaliation claim.

**Conclusion**

Based on the foregoing discussion, this Court denies Hospira's motion for summary judgment in its entirety [80].


IT IS SO ORDERED.

Date: 12/26/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge